UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PNC BANK, N.A. | * | LEAD CASE CIVIL ACTION |
| | * | NO. 13-00578 |
| Plaintiff, | * | CW/ NOS: 14-00766 AND 15-0025 |
| | * | |
| VERSUS | * | |
| | * | |
| IRVIN FAMILY LIMITED PARTNERSHIP, | * | JUDGE JOHN W. DEGRAVELLES |
| A LOUISIANA PARTNERSHIP IN | * | |
| COMMENDAM, THE ESTATE OF MELVIN | * | |
| IRVIN, JR. VIEWPOINT DEVELOPMENT AND | * | |
| CONSTRUCTION COMPANY, ORLEANS | * | |
| PLACE SUBDIVISION, LLC, SORRENTO | * | MAGISTRATE JUDGE STEPHEN |
| LUMBAR CO., INC., and IBERVILLE BANK | * | RIEDLINGER |
| | * | |
| Defendants. | * | |

**MEMORANDUM IN SUPPORT OF PNC BANK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, PNC Bank, N.A. ("PNC Bank") respectfully submits this memorandum in support of its Motion for Partial Summary Judgment (the "Motion"). For the reasons set forth more fully below, PNC Bank is entitled to partial summary judgment in its favor and against the defendants, Irvin Family Limited Partnership, A Louisiana Partnership in Commendam, the Estate of Melvin Irvin, Jr., and Irvin & Associates, Inc., *in solidio* (collectively, the "Defendants").

**INTRODUCTION**

PNC Bank is the holder of a promissory note ("Note") dated August 29, 2007, in the amount of $2,550,000.00, originally in favor of BMC Capital LP, and executed by Irvin Family Limited Partnership (sometimes "Irvin Family Partnership" or "Borrower"), through its General

1

Partner, Irvin & Associates, Inc., represented therein by Melvin Irvin, Jr.[1] In order to secure payment of the Note, the Borrower granted a mortgage ("PNC Mortgage" or "Mortgage Contract") that encumbered certain immovable property located in Ascension Parish, Louisiana, that is commonly known as the "François Plaza" development ("Mortgage Collateral").[2] The Note together with its ancillary security agreements were subsequently conveyed by assignment to Red Mortgage Capital, Inc., which thereafter executed an assignment of the Note in favor of PNC Bank.[3]

The Borrower has failed to comply with the obligations set forth under the terms and conditions of the Note and the PNC Mortgage, and the Note is now in default. However, PNC Bank is unable to enforce its mortgage securing the Note because the Mortgage Collateral is subject to certain title defects, as more particularly described in the pleadings filed on behalf of PNC Bank.[4]

On December 10, 2014, PNC Bank filed its Complaint seeking *inter alia* to cure multiple title defects affecting the Mortgage Collateral. On March 24, 2015, PNC Bank filed a *First Supplemental and Amending Complaint by PNC Bank, N.A.* ("Amended Complaint").[5] In the Complaint and Amended Complaint, PNC Bank has alleged generally the title defects affecting the Mortgage Collateral, which generally include the following: (1) the legal description of the immovable properties contained in the Mortgage Collateral inaccurately and incompletely

---

[1] *See* Rec. Doc. 1, *Complaint for Breach of Contract, Specific Performance, Reformation of Contract, Declaratory Judgment and For Damages,* ¶10. ("Complaint").
[2] *See* Complaint, ¶ 11. The PNC Mortgage was recorded in the Ascension Parish mortgage records on September 5, 2007, as Instrument Number 00678553 and is attached to the Complaint as Exhibit "3". A certified copy of the PNC Mortgage is attached hereto as Exhibit "A".
[3] *See* Complaint, ¶ 10; *See also* Exhibit "1", "Assignment of Multiple Indebtedness Mortgage and Assignment of Leases and Rents", recorded in the Ascension Parish mortgage records on September 5, 2007, as Instrument Number 00678555, and Exhibit "2", "Assignment of Mortgage and Assignment of Rents", recorded in the Ascension Parish mortgage records on May 25, 2010, as Instrument Number 00748472.
[4] *See* Complaint, ¶ 13; *See also* Rec. Doc. 14, *First Supplemental and Amended Complaint by PNC Bank, N.A.*, ¶14.
[5] *See* Rec. Doc. 14.

describes the tracts or parcels of ground secured by the Mortgage Contract[6]; (2) the Mortgage Collateral is affected by defective and/or non-functional condominium regimes that have created ambiguities in the description of the Mortgage Collateral[7]; (3) the legal description of the Mortgage Contract references property descriptions that have been rescinded and terminated in the 1985 condominium regimes[8]; (4) there are certain prior encumbrances and adverse alienations affecting the Mortgage Contract[9]; and, (5) there are third parties who may have a potential ownership interest in and to portions of the Mortgage Collateral. [10]

PNC Bank further alleged in its Complaint and Amended Complaint that the Irvin Family Partnership is in breach of its warranty of title covenants of the Mortgage Contract to the extent that the Irvin Family Partnership warranted to PNC Bank that it was vested with full ownership in and to the Mortgage Collateral, and that there were no prior encumbrances affecting the Property at the time the PNC Mortgage was recorded.[11] Additionally, the Mortgage Contract also required the Borrower to execute any documents necessary to maintain the Mortgage on the Mortgage Collateral, which would encompass any curative documents necessary to cure the title defects outlined above.[12]

PNC Bank also asserted a claim for breach of contract against the Defendants for failure to comply with their obligations under the Pre-Negotiation Agreement, which was signed by the parties on April 11, 2012.[13] Under the terms of the Pre-Negotiation Agreement, the Defendants are obligated to cooperate and execute necessary title curative documents that will resolve the title defects. In accordance with the provisions of the Mortgage Contract and the Pre-Negotiation

---

[6] *See* Complaint, ¶¶19-24; *See* Amended Complaint, ¶19(a).
[7] *See* Complaint, ¶¶ 25-36.
[8] *See* Amended Complaint, ¶ 19(a).
[9] *See* Complaint, ¶¶ 37-51.
[10] *See* Complaint, ¶¶ 15-18; *See also* Amended Complaint, ¶¶ 16(a)-18.
[11] *See* Exhibit "A", pg. 3 of the Mortgage Contract; *See also* Amended Complaint, ¶¶ 59-61.
[12] See Exhibit "A", pg. 15 of the Mortgage Contract.
[13] See Exhibit "B", a copy of the Pre-Negotiation Agreement; *See also* Complaint, ¶¶ 52-57.

Agreement, PNC Bank has previously provided title curative documents to the representatives of the Defendants on numerous occasions. However, to date, the Defendants have failed to and/or refused to execute the curative documents despite their obligation to do so under the Mortgage Contract and Pre-Negotiation Agreement.[14]

Accordingly, PNC Bank is entitled to a partial summary judgment declaring that the defendant, Irvin Family Partnership, had a duty to deliver clear and merchantable title to the encumbered property and execute title curative documents pursuant to the provisions of the PNC Mortgage. PNC is further entitled to a partial summary judgment declaring that the Defendants have a duty under the Pre-Negotiation Agreement to execute title curative documents to cure any title defects, which may be more particularly established by a subsequent motion for summary judgment or at trial.

## ARGUMENT AND AUTHORITY

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15]  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. "As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[16]

---

[14] *See* Complaint, ¶¶ 52-57.
[15] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Evans v. City of Houston*, 246 F.3d 344, 347-48 (5th Cir. 2001).
[16] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[17] The nonmovant must demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial.[18] The Supreme Court has noted that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[19] "Rule 56(c) mandates the entry of summary judgment against a party who has failed to make an evidentiary showing sufficient to establish an essential element of her case."[20]

**B. Irvin Family Limited Partnership had a duty to deliver clear and merchantable title to the encumbered property under the Mortgage Contract.**

The Irvin Family Partnership executed a mortgage in favor of BMC Capital, LP on August 29, 2007. "A conventional mortgage may be established only by a written contract." Under La. C.C. art. 3287. "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance consists of giving, doing, or not doing something." La. C.C. art. 1906. Thus, a contract is a source of obligations. La. C.C. art. 1757. Accordingly, a mortgage is a contract between the mortgagor and the mortgagee, and therefore, is governed generally by the Louisiana Civil Code articles applicable to conventional obligations. La. C.C. art. 1906, *et seq*.

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986); *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Evans, supra*, 246 F.3d at 348.
[18] *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497 (1997).
[19] *Anderson, supra*, 477 U.S. at 249-50.
[20] *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

La. C.C. Art. 1994 provides, "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." In Louisiana, the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.[21]

Pursuant to the provisions of the PNC Mortgage, the Borrower had a duty to deliver clear and merchantable title to the mortgagee. In the PNC Mortgage, Irvin Family Partnership warranted to PNC Bank that it was and would remain the lawful owner of the PNC Mortgage Collateral; that there would not be any prior encumbrances affecting the Property at the time the PNC Mortgage was recorded; and, that the PNC Mortgage would not be subordinate, at any time, to any security rights, interests, liens or claim of, or in favor of, any person, firm, corporation, or other entity. More specifically, the PNC Mortgage provision that expresses the warranty of title covenant in favor of PNC Bank provides as follows:

> **REPRESENTATION AND WARRANTIES CONCERNING THE PROPERTY. Except as previously disclosed to Mortgagee in writing, Mortgagor represents and warrants that; (A) Mortgagor is and will continue to be the lawful owner of the Property; (B) Mortgagor has the right to mortgage the Property to Mortgagee; (C) as of the time this Mortgage is recorded, there are no Encumbrances affecting the Property; (D) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, liens, or claims of, or in favor of, any person, firm, corporation, or other entity; and (E) the Mortgage is binding upon Mortgagor as well as Mortgagor's heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is cancelled in the manner provided above.** *See* Exhibit "A".

---

[21] *Favrot v. Favrot*, 2010-0986 (La. App. 4th Cir. 2/9/11); 68 So. 3d 1099, 1109.

As alleged in the Complaint and Amended Complaint, the Borrower was not the lawful owner of all of the property described in the Mortgage Collateral when the Mortgage Contract was recorded. The Mortgage Collateral has been historically described in prior conveyances by identifying a larger tract and then referring to the properties conveyed out of the larger tract, known as "less and except" tracts.[22] However, certain "less and except" tracts were unintentionally omitted from transfers to and from the Borrower causing third parties, Viewpoint Development and Construction Company, Orleans Place Subdivision, LLC, and Sorrento Lumber Company, to acquire an ownership interest in portions of the Mortgage Collateral, particularly Lots 5 and 8.[23]  By conveyances on April 29, 1996, December 6, 1996, and November 9, 2006, Irvin Family Partnership conveyed several tracts, which included Lots 5 and 8, to Viewpoint Development and Construction Company.[24] Thereafter, Irvin Family Partnership mortgaged Lots 5 and 8 to BMC Capital, LP.[25] As a result of the above described conveyances, Irvin Family Partnership was not the lawful owner of Lots 5 and 8, and therefore, did not have the right to place a mortgage on Lots 5 and 8.

Likewise, at the time of the PNC Mortgage, there also existed prior encumbrances and adverse alienations affecting the Mortgage Collateral, including a mortgage in favor of Iberville Bank and ground leases in favor of the State of Louisiana through the Department of Social Services.[26] Subsequent to the filing of the Complaint, PNC Bank acquired a partial release of the Iberville Bank mortgage. However, PNC Bank has been unsuccessful in obtaining a subordination of the ground leases in favor of the State of Louisiana as such requires the concurrence of the Borrower.

---

[22] *See* Complaint, ¶ 16; *See also* Amended Complaint, ¶¶ 14, 16(a).
[23]  *See* Complaint, ¶¶ 15-18; *See also* Amended Complaint, ¶¶ 16(a)-18.
[24] *See* Complaint, ¶ 17; *See also* Amended Complaint, ¶ 17.
[25] *See* Exhibit "A".
[26] *See* Complaint, ¶¶ 37-51.

Furthermore, the Mortgage Collateral is burdened by defective and non-functional condominium regimes that have created ambiguities in the description of the Mortgage Collateral.[27] To correct the legal description, PNC Bank has caused the survey to be made of the collateral that was intended by PNC Bank and the Borrower to be encumbered by the mortgage. The survey encompasses all contiguous tracts that comprise the Mortgage Collateral and is more particularly described in paragraph 22 of the Complaint. In order for the survey to be effective, the property must be re-subdivided as described in the survey, and the condominium regime must be revised and reinstated so as to correctly describe the Mortgage Collateral. However, these efforts require the concurrence and cooperation of the Borrower, which have not been forthcoming to date.

Irvin Family Partnership, by signing the Mortgage Contract, agreed to be bound by the warranty of title covenants contained therein. Accordingly, Irvin Family Partnership had a duty to deliver clear and merchantable title to the encumbered property. Therefore, PNC Bank is entitled to a judgment declaring that the Mortgage Contract created certain contractual duties and obligations which included the Borrower's affirmative duty to deliver clear and merchantable title to the encumbered property.

**C.   The Defendants have a duty to execute the necessary curative documents to cure the title defects and maintain the PNC Mortgage.**

Under the terms of the Mortgage Contract, Irvin Family Partnership obligated itself to execute any necessary documents to maintain the effect of the Mortgage. The PNC Mortgage provision that imposes this obligation provides as follows:

> **EXECUTION OF ADDITIONAL DOCUMENT. Mortgagor agrees to execute all additional documents, instruments and agreements that Mortgagee may deem to be necessary and proper, within its sole discretion, in form and substance satisfactory to Mortgagee, to keep this Mortgage in**

---

[27] *See* Complaint, ¶ 22.

**effect, to better reflect the true intent of this Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document.** *See* Exhibit "A".

Similarly, the Defendants, Irvin Family Partnership, Irvin & Associates, and Melvin Irvin, Jr., executed a Pre-Negotiation Agreement on April 11, 2012.[28] The pertinent portion of the Pre-Negotiation Agreement is stated as follows:

> C.   **COOPERATION OF BORROWER. You will, and will cause all Borrower Parties to, (i) cooperate with us in, and to execute any documents and pleadings related to, correcting any title defects related to the property that was intended to secure the loan.**

Under the terms of the Pre-Negotiation Agreement, the Defendants have a duty to execute any documents and pleadings necessary to correct any title defects related to the property.[29] By executing the Pre-Negotiation Agreement, the Defendants acknowledged the existence of the title defects and obligated themselves to cooperate and execute title curative documents and perform any action that would resolve the title issues.[30] Furthermore, PNC further avers that the Defendant, Irvin Family Limited Partnership, through its former counsel, acknowledged the existence of the title defects made subject to this proceeding, and agreed to cooperate in correcting those title defects.[31] To resolve the title defects, PNC Bank has previously provided curative documents to the Defendants. Despite PNC Bank's efforts, the Defendants have failed to fulfill their obligations under the Mortgage Contract and the Pre-Negotiation Agreement by failing to and/or refusing to execute the curative documents which would resolve the title defects.

---

[28] *See* Complaint, ¶¶ 52-57; *See also* Amended Complaint, ¶¶ 53(a) and 62. *See* also a copy of the Pre-Negotiation Agreement attached hereto as Exhibit "B".
[29] *See* Complaint, ¶ 52-57; *See also* Amended Complaint, ¶¶ 53(a) and 62.
[30] *See* Complaint, ¶¶ 52-58; *See also* Amended Complaint, ¶ 53(a).
[31] *See* Amended Complaint, ¶ 53(b). Documents that evidence the acknowledgement by Irvin Family Limited Partnership's former counsel are attached to the Amended Complaint as Exhibit "34", *in globo*.

It is undisputed that the Defendants executed the Mortgage Contract and the Pre-Negotiation Agreement. It is also undisputed that under the express provisions of the Mortgage Contract and Pre-Negotiation Agreement, the Defendants have a duty to execute the necessary curative documents to cure any title defects that may be established in a subsequent motion for summary judgment or at trial. Therefore, PNC Bank is entitled to a judgment declaring that the Defendants have a duty to cooperate in curing any title defects, which includes the execution of title curative documents necessary to cure any title defects that will be established by a subsequent summary judgment motion or at trial.

## **CONCLUSION**

For the foregoing reasons, PNC Bank, N.A. prays that, pursuant to Federal Rule of Civil Procedure 56, this Court:

1. Grant partial summary judgment in favor of PNC Bank, N.A. and against Defendants, Irvin Family Partnership, Irvin & Associates and the Estate of Melvin Irvin, Jr.;

2. Find that the Defendant, Irvin Family Partnership, had a duty to deliver clear and merchantable title to the encumbered property under the Mortgage Contract; and,

3. Find that the Defendants, Irvin Family Partnership, Irvin & Associates and the Estate of Melvin Irvin, Jr., have a duty to execute title curative documents under the provisions of the Mortgage Contract and Pre-Negotiation Agreement.

RESPECTFULLY SUBMITTED,

**SEALE, SMITH, ZUBER & BARNETTE, LLP**

BY: __/s/ *Jessica W. Chapman*_____
WILLIAM C. KAUFMAN, III, #7657- T.A.
JESSICA W. CHAPMAN, #31097 – T.A.
Two United Plaza, Suite 200
8550 United Plaza Boulevard
Baton Rouge, Louisiana 70809
Telephone: (225) 924-1600
Facsimile: (225) 924-6100
**ATTORNEYS FOR PNC BANK, N.A.**

### CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing pleadings was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system. Baton Rouge, Louisiana, this 8th day of September, 2015.

*/s/ Jessica W. Chapman* _____
Jessica W. Chapman