# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PNC BANK, N.A. | * | LEAD CASE CIVIL ACTION |
| | * | NO. 13-00578 |
| Plaintiff, | * | CW/ NOS: 14-00766 AND 15-0025 |
| | * | |
| VERSUS | * | |
| | * | |
| IRVIN FAMILY LIMITED PARTNERSHIP, | * | JUDGE JOHN W. DEGRAVELLES |
| A LOUISIANA PARTNERSHIP IN | * | |
| COMMENDAM, THE ESTATE OF MELVIN | * | |
| IRVIN, JR., VIEWPOINT DEVELOPMENT AND | * | |
| CONSTRUCTION COMPANY, ORLEANS | * | |
| PLACE SUBDIVISION, LLC, SORRENTO | * | MAGISTRATE JUDGE RICHARD |
| LUMBER CO., INC., and IBERVILLE BANK | * | BOURGEOIS, JR. |
| | * | |
| Defendants. | * | |

## MEMORANDUM IN SUPPORT OF PNC BANK'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, PNC Bank, N.A. ("PNC Bank") respectfully submits this memorandum in support of its Motion for Summary Judgment (the "Motion"). For the reasons set forth more fully below, PNC Bank is entitled to summary judgment in its favor and against the defendants, Irvin Family Limited Partnership, a Louisiana Partnership in Commendam (sometimes referred to as "Irvin Family Partnership" or "Borrower"), Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr. and the Estate of Melvin, Jr. (the "Estate of Melvin Irvin, Jr."), Irvin & Associates, Inc. ("Irvin & Associates"), Viewpoint Development and Construction Company ("Viewpoint"), Orleans Place Subdivision, LLC ("Orleans Place"), and Sorrento Lumber Co., Inc. ("Sorrento Lumber"), *in solidio* (collectively, the "Defendants").

1

## INTRODUCTION

PNC Bank is the holder of a promissory note ("Note") dated August 29, 2007, in the amount of $2,550,000.00, originally in favor of BMC Capital LP, and executed by Irvin Family Limited Partnership (sometimes "Irvin Family Partnership" or "Borrower"), through its General Partner, Irvin & Associates, Inc. ("Irvin & Associates"), represented therein by Melvin Irvin, Jr.[1] In order to secure payment of the Note, the Borrower granted a mortgage ("PNC Mortgage" or "Mortgage Contract") that encumbered certain immovable property located in Ascension Parish, Louisiana, that is commonly known as the "François Plaza" Condominium Development (the "PNC Mortgage Collateral" or "Mortgage Collateral").[2]   The Note together with its ancillary security agreements were subsequently conveyed by assignment to Red Mortgage Capital, Inc., which thereafter executed an assignment of the Note in favor of PNC Bank.[3]

The Borrower has failed to comply with the obligations set forth under the terms and conditions of the Note and the PNC Mortgage, and the Note is now in default.[4] However, PNC Bank is unable to enforce its mortgage securing the Note because the PNC Mortgage Collateral is subject to certain title defects, as more particularly described in the pleadings filed on behalf of PNC Bank and as described in the attached Declaration of Isaac McPherson Gregorie, Jr. (hereinafter referred to as "Expert Report').[5]

---

[1] *See* Rec. Doc. 1, *Complaint for Breach of Contract, Specific Performance, Reformation of Contract, Declaratory Judgment and For Damages,* ¶10. ("Complaint").

[2] *See* Complaint, ¶ 11. The PNC Mortgage was recorded in the Ascension Parish mortgage records on September 5, 2007, as Instrument Number 00678553 and is attached to the Complaint as Exhibit "3". A certified copy of the PNC Mortgage is attached hereto as Exhibit "A".

[3] *See* Complaint, ¶ 10; *See also* Exhibit "1", "Assignment of Multiple Indebtedness Mortgage and Assignment of Leases and Rents", recorded in the Ascension Parish mortgage records on September 5, 2007, as Instrument Number 00678555, and Exhibit "2", "Assignment of Mortgage and Assignment of Rents", recorded in the Ascension Parish mortgage records on May 25, 2010, as Instrument Number 00748472.

[4] PNC Bank secured a final judgment on the promissory note on May 18, 2016. *See* Rec. Doc. 149.

[5] *See* Complaint, ¶ 13; *See also* Rec. Doc. 14, *First Supplemental and Amended Complaint by PNC Bank, N.A.*, ¶14. *See also* Exhibit C, Declaration of Isaac McPherson Gregorie, Jr.

On December 10, 2014, PNC Bank filed its *Complaint for Breach of Contract, Specific Performance, Reformation of Contract, Declaratory Judgment and For Damages* ("Complaint") seeking *inter alia* to cure multiple title defects affecting the PNC Mortgage Collateral. On March 24, 2015, PNC Bank filed a *First Supplemental and Amending Complaint by PNC Bank, N.A.* ("Amended Complaint").[6] In the Complaint, Amended Complaint and in the attached Expert Report, PNC Bank has identified the various title defects affecting the PNC Mortgage Collateral, which generally include the following: (1) the legal description of the immovable properties contained in the Mortgage Contract inaccurately and incompletely describes the tracts or parcels of ground secured by the Mortgage Contract[7]; (2) the PNC Mortgage Collateral is affected by defective and/or non-functional condominium regimes that have created ambiguities in the description of the PNC Mortgage Collateral[8]; (3) the legal description of the Mortgage Contract references property descriptions that have been rescinded and terminated in the 1985 condominium regimes[9]; (4) there are certain prior encumbrances and adverse alienations affecting the Mortgage Contract[10]; and, (5) there are third parties who may have a potential ownership interest in and to portions of the Mortgage Collateral. [11]

PNC Bank further alleged in its Complaint and Amended Complaint that the Irvin Family Partnership is in breach of its warranty of title covenants of the Mortgage Contract to the extent that the Irvin Family Partnership warranted to PNC Bank that it was vested with full ownership in and to the PNC Mortgage Collateral, and that there were no prior encumbrances affecting the Property at the time the PNC Mortgage was recorded.[12] Additionally, the Mortgage Contract also

---

[6] *See* Rec. Doc. 14.
[7] *See* Complaint, ¶¶19-24; *See* Amended Complaint, ¶19(a). *See also* Exhibit "C".
[8] *See* Complaint, ¶¶ 25-36.  *See also* Exhibit "C".
[9] *See* Amended Complaint, ¶ 19(a).  *See also* Exhibit "C".
[10] *See* Complaint, ¶¶ 37-51.  *See also* Exhibit "C".
[11] *See* Complaint, ¶¶ 15-18; *See also* Amended Complaint, ¶¶ 16(a)-18.  *See also* Exhibit "C".
[12] *See* Exhibit "A", pg. 3 of the Mortgage Contract. *See also* Amended Complaint, ¶¶ 59-61.

required the Borrower to execute any documents necessary in the judgment of the Lender, PNC Bank, to maintain the Mortgage on the Mortgage Collateral, which would encompass any title curative documents necessary to cure the title defects outlined above.[13]

PNC Bank also asserted a claim for breach of contract against the Defendants, Irvin Family Limited Partnership, Irvin & Associates, and the Estate of Melvin Irvin, Jr., for failure to comply with their obligations under the Pre-Negotiation Agreement, which was signed by the parties on April 11, 2012.[14] Under the terms of the Pre-Negotiation Agreement, the Defendants are obligated to cooperate in the performance of any action required to cure the title defects enumerated *supra*, including the execution of title curative documents.

In accordance with the provisions of the Mortgage Contract and the Pre-Negotiation Agreement, PNC Bank has provided title curative documents to the representatives of the Defendants along with a listing of actions required by the Borrowers and third parties necessary to resolve the title defects on June 6, 2016, and June 10, 2016.[15] However, to date, the Defendants have failed to and/or refused to execute the curative documents despite their obligation to do so under the Mortgage Contract and Pre-Negotiation Agreement, and the judgment previously rendered by this Court.[16]

This Court has already determined that the Defendant, the Irvin Family Limited Partnership, has a duty to delivery clear and merchantable title to the Mortgage Collateral pursuant to the Mortgage Contract; and that the Defendants, the Irvin Family Limited Partnership, Irvin & Associates, and Edgar Irvin, in his capacity as the Independent

---

[13] *See* Exhibit "A", pg. 15 of the Mortgage Contract. *See also*, Exhibit "C" and title curative documents attached thereto.
[14] *See* Exhibit "B", a copy of the Pre-Negotiation Agreement; *See also* Complaint, ¶¶ 52-57.
[15] A copy of the correspondences, dated June 6, 2016 and June 10, 2016, respectively, are attached hereto as Exhibit "F", *in globo*. The particular actions required to cure the title defects are enumerated in the Expert Report, attached as an exhibit to Exhibit "C". A copy of the title curative documents are also attached to Exhibit "C".
[16] *See* Complaint, ¶¶ 52-57. *See also* Rec. Doc. 147.

Administrator of the Estate of Melvin Irvin, Jr., have a duty to execute any and all curative documents necessary to cure the title defects affecting the Mortgage Collateral pursuant to the Mortgage Contract and Pre-Negotiation Agreement.[17]

Accordingly, PNC Bank is entitled to a summary judgment (1) declaring that there are title defects affecting the PNC Mortgage Collateral encumbered by the PNC Mortgage Contract; (2) declaring that the Irvin Family Limited Partnership has breached its duty to deliver clear and merchantable title to the encumbered property under the warranty of title covenants of the PNC Mortgage Contract; (3) declaring that the Irvin Family Partnership has breached its duty to cooperate in maintaining the effect of the mortgage on the PNC Mortgage Collateral under the PNC Mortgage Contract, including the execution of the title curative documents; (4) declaring that the Irvin Family Limited Partnership, Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin, Irvin, Jr. and Irvin & Associates have breached their duty to cooperate in curing the title defects, including the execution of the title curative documents, under the Pre-Negotiation Agreement; (5) declaring that the Defendants, Viewpoint Development and Construction Company, Orleans Place Subdivision, LLC and Sorrento Lumber Co., Inc., did not intend to acquire an ownership interest in the PNC Mortgage Collateral encumbered by the PNC Mortgage, specifically Lots 5 and 8; (6) declaring that the Defendants, Viewpoint Development Construction Company, Orleans Place Subdivision, LLC and Sorrento Lumber Co., Inc., do not have an ownership interest in and to the PNC Mortgage Collateral encumbered by the PNC Mortgage Contract, specifically Lots 5 and 8; (7) declaring that the Plaintiff, PNC Bank, is entitled to specific performance under the PNC Mortgage Contract and Pre-Negotiation Agreement; and, (8) ordering the Defendants, Irvin Family Limited Partnership, Irvin & Associates, Edgar Irvin, in his capacity as the Independent

---

[17] *See* Rec. Doc. 48 and Rec. Doc. 147.

Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin Irvin, Jr.,  Viewpoint Development and Construction Company, Orleans Place Subdivision, LLC, and Sorrento Lumber Co., Inc., to execute and deliver unto PNC all necessary curative documents and to perform all acts that are necessary to resolve all title defects associated with the PNC Mortgage Collateral.

## ARGUMENT AND AUTHORITY

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[18]   Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. "As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[19]

Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[20]   The nonmovant must demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial.[21]   The Supreme Court has noted that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be

---

[18] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Evans v. City of Houston*, 246 F.3d 344, 347-48 (5th Cir. 2001).
[19] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986); *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Evans, supra*, 246 F.3d at 348.
[21] *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497 (1997).

granted."[22]   "Rule 56(c) mandates the entry of summary judgment against a party who has failed

to make an evidentiary showing sufficient to establish an essential element of her case."[23]

    **B. There are title defects affecting the immovable property encumbered by the PNC Mortgage.**

        **1. Defective Property Description in the PNC Mortgage and Defective and/or Non-Functional Condominium Regimes burdening the PNC Mortgage Collateral**

PNC filed this action seeking to reform the legal description in the PNC Mortgage to

more accurately describe the immovable property that was intended to be encumbered by the

Mortgage Contract. As set forth in the original Complaint, the original collateral in the PNC

Mortgage is described as "Francois Plaza" Development, and more particularly as Lots F-1, F-2,

F-3, 3-A, Lot 5, Lot 7, and Lot 8.[24] The F designated Lots were created in the 1985

condominium regime, which was ultimately terminated and rescinded.[25] Thereafter, Lots 1, 2, 3,

4 and 5 were created by a survey dated August 5, 1985, which comprises portions of the same

property formerly designated as F-1, F-2, F-3 as identified and incorporated in the terminated

1985 condominium regime.[26] In 1994, a second condominium regime was filed and it

incorporated Lots 1, 2, 3, 4 and 5, and added Lot 7.[27] However, the second condominium regime

did not include any of the formerly designated F parcels as shown as collateral in the PNC

Mortgage.[28] As a result, the description of PNC's Mortgage Collateral references surveys and

---

[22] *Anderson, supra*, 477 U.S. at 249-50.

[23] *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

[24] *See* Complaint, ¶¶ 21, 26. *See also* Exhibit "A", a copy of the Mortgage Contract. *See also,* a copy of the 1985 Condominium Regime and its rescission attached to the Complaint as Exhibits "16" and "17, and a recorded copy of the map depicting the "F" parcels attached to the Complaint as Exhibit "18".

[25] *See* Complaint, ¶ 26.

[26] *See* Complaint, ¶ 27. *See* a copy of the recorded "Map Showing Francois Plaza Office Condominium", recorded at Instrument Number 225826, attached to the Complaint as Exhibit "19".

[27] *See* Complaint, ¶ 29, 30. See also, a copy of the 1994 condominium declaration, recorded at COB 525, Page 478, Instrument Number 335998, in the conveyance records of Ascension Parish, attached to the Complaint as Exhibit "21".

[28] *See* Complaint, ¶ 32.

legal descriptions which are not accurately described in the current condominium regimes that affect the property.[29]

In connection with the PNC Mortgage, the Borrower, the Irvin Family Limited Partnership, executed a HUD-1 Settlement Statement, which identifies the properties by their respective municipal addresses.[30] Additionally, an appraisal report was prepared in connection with the closing of the PNC Mortgage, and said appraisal referenced the same municipal addresses as identified in the HUD-1 Settlement Statement.[31] These municipal addresses included on the HUD-1 Settlement Statement, appraisal report and PNC Mortgage include the following properties: 1026 Worthy Road, 1028 Worthy Road, 1056 Worthy Road, 1060 Worthy Road, 1064 Worthy Road, 1068 Worthy Road, 1078 Worthy Road, and 915 Nickens Avenue.[32]

As stated in the Expert Report, the municipal addresses correspond to particular Lot or Parcel designations within Francois Plaza.[33] Consequently, PNC Bank has obtained a survey of the properties which it avers the Irvin Family Limited Partnership intended to encumber in favor of the PNC Mortgage. The survey, which is attached to Mr. Gregorie's Declaration, creates a single property description for the property that was intended by the parties to be included in the PNC Mortgage and designates the new description as Lot 7-A. The PNC Mortgage should also include a description for Lot 3 of Bonnie Lane, which was incorrectly designated as Lot 9 of Francois Plaza and Lot 7 of Bonnie Lane in the Mortgage Contract.[34]

---

[29] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report.

[30] *See* Exhibit "E", Declaration of Wendy Nelson and exhibits attached thereto. *See also* Exhibit "A", a copy of the Mortgage Contract.

[31] *See* Exhibit "E", Declaration of Wendy Nelson and exhibits attached thereto.

[32] It should also be noted that this same municipal addresses appear on pg. 2 of the Mortgage Contract.

[33] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report.

[34] *See* Exhibit "C". Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report. The addition of Lot 3 of Bonnie Lane Subdivision is included in the legal descriptions attached to the title curative documents. However, the referenced survey map does not include Lot 3 of Bonnie Lane Subdivision, which should also be included in the PNC Mortgage.

It cannot be reasonably disputed that the Borrower, the Irvin Family Limited Partnership, intended to mortgage all of Francois Plaza Development, as described on the attached survey map, but in truth and fact, the legal description of the Francois Plaza Development references property descriptions that had been rescinded and terminated in the 1985 condominium regime, which created ambiguities as to the correct legal description for these properties.[35] In considering the evidence in its entirety, PNC Bank has clearly demonstrated that an error occurred in the preparation of the conveyances and condominium regimes affecting the Mortgage Collateral, which resulted in an inaccurate and incomplete legal description in the PNC Mortgage. Consequently, the Irvin Family Limited Partnership cannot establish that it did not intend to encumber the property as described in Lot 7-A as depicted on the attached survey map and Lot 3 of Bonnie Lane Subdivision, nor can it establish that there are no title defects affecting the PNC Mortgage Collateral.

### 2. Third Parties May Have Adverse Ownership Interests in the PNC Mortgage Collateral.

The PNC Mortgage Collateral has been historically described in prior conveyances by identifying the properties conveyed out of the larger tract, known as "less and except" tracts.[36] These certain "less and except" tracts were unintentionally omitted from transfers to and from the Borrower causing its related companies, Viewpoint and Orleans Place, and Sorrento Lumber, to appear to acquire an ownership interest in portions of the Mortgage Collateral by mutual mistake and error.[37] Further, the description of Lots F-1, F-2, F-3 and Lot 7 as identified in the conveyances noted in paragraph 17 of the Complaint differ from the descriptions as recited in the

---

[35] *See* Complaint, ¶¶ 25-36; *See also* Amended Complaint ¶ 19(a).
[36] *See* Complaint, ¶ 16; *See also* Amended Complaint, ¶¶ 14, 16(a).
[37] *See* Complaint, ¶ 16, 17, 18; *See also* Amended Complaint, ¶¶ 16(a), 17, 18 and 19(a).

PNC mortgage.[38] Consequently, Viewpoint, Orleans Place and Sorrento Lumber may appear to have an ownership interest in the immovable property that is subject to PNC's Mortgage and security agreements.[39] The indicia of ownership is a cloud on the title to the Mortgage Collateral.

The agreements referenced in PNC's Compliant and Amended Complaint are those conveyances by which the named Defendants, Viewpoint, Orleans Place, and Sorrento Lumber, acquired a potential ownership interest in the Mortgage Collateral from Irvin Family Limited Partnership. It should be noted to the Court that Melvin Irvin, Jr., now deceased and whose succession is made a defendant in this proceeding, owns an interest, in whole or in part, in the defendant entities, Viewpoint and Orleans Place.

As alleged in the Complaint, by conveyances on April 29, 1996, December 6, 1996, and November 9, 2006, Melvin Irvin, Jr., Enelda Irvin and Irvin Family Limited Partnership conveyed many tracts, which included Lots 5 and 8, to Viewpoint.[40] Subsequent to acquiring these tracts and on November 9, 2006, Viewpoint granted a mortgage in favor of defendant, Iberville Bank ("Iberville Mortgage"), on all the tracts described in the aforementioned conveyances, which included portions of the PNC Mortgage Collateral.[41] In the Complaint and Amended Complaint, PNC asserts that more property was conveyed to Viewpoint than intended; specifically, the purpose of the sale was to convey property, "less and except Lots 5 and 8", to

---

[38] *See* Amended Complaint ¶ 16(a).

[39] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying exhibits.

[40] *See* Complaint, ¶ 17; *See also* Amended Complaint, ¶ 17. The Quitclaim Deed, dated April 29, 1996, and recorded on October 15, 1996, in the conveyance records of the Ascension Parish Clerk of Court as COB 567, Page 249, Instrument Number 380517; the Act of Correction, dated October 21, 1996, and recorded on October 31, 1996 in the conveyance records of the Ascension Parish Clerk of Court as COB 567, Page 826, Instrument Number 381326; the Cash Sale, dated December 6, 1996, and recorded on December 11, 1996, in the conveyance records of the Ascension Parish Clerk of Court as COB 569, Page 576, Instrument Number 383273; and, Sale of Property, recorded on November 9, 2006, in the conveyance records of the Ascension Parish Clerk of Court as Instrument Number 653473, are attached to the Complaint as Exhibits "7", "8", "9", and "10", respectively.

[41] *See* Complaint, ¶ 38; A copy of the Iberville Mortgage and the Act of Correction to the Iberville Mortgage, are attached to the Complaint as Exhibits "23" and "24", respectively.

Viewpoint.[42]   However, the legal description in the conveyances from Irvin Family Limited Partnership to Viewpoint failed to identify Lots 5 and 8 as omitted parcels from the transfer. [43]

At the time of the filing of the original Complaint, the defendant, Iberville Bank, executed a partial release of Lots 5 and 8, demonstrating that it was the intention of Viewpoint and Iberville Bank *not* to encumber Lots 5 and 8.[44]   Subsequent to filing of the Complaint, Iberville Bank acknowledged that it had no interest in the PNC collateral and voluntarily executed an instrument entitled, "Partial Release of Mortgage" on January 22, 2015, that was recorded in the mortgage records of Ascension Parish.[45]

After inadvertently conveying Lots 5 and 8 to Viewpoint, the Irvin Family Limited Partnership thereafter mortgaged Lots 5 and 8 to BMC Capital LP (PNC Bank's predecessor-in-interest), demonstrating its intent to retain ownership of Lots 5 and 8.[46] On April 20, 2009, Viewpoint then conveyed Lots 5 and 8, together with other property, to Orleans Place pursuant to a Sale with Assumption of Mortgage, dated April 20, 2009, and recorded in the official records for the Ascension Parish Clerk of Court as Instrument Number 721257.[47] Consequently, Orleans Place acquired the property and agreed to assume the indebtedness of Viewpoint. Considering the above, the conveyances from Irvin Family Limited Partnership to Viewpoint should not have included the transfer of Lots 5 and 8, and as such, Viewpoint did not intend to convey and Orleans Place did not intend to acquire Lots 5 and 8.

---

[42] *See* Complaint, ¶ 14(d) of the Complaint; *See also* Amended Complaint, ¶ 17(a)(1).

[43] *See* Amended Complaint, ¶ 17(a)(1). See *also* Exhibits "7", "8", "9", and "10" attached to the Complaint.

[44] *See* Complaint, ¶ 40; *See also,* a copy of the recorded partial release by Iberville Bank, which is attached to the Complaint as Exhibit "25".

[45] *See* Amended Complaint, ¶ 44(a); *See also,* a copy of the "Partial Release of Mortgage", attached to the Amended Complaint as Exhibit "32".

[46] *See* Complaint, ¶¶ 10-11.

[47] *See* Complaint, ¶ 17. *See* a copy of the sale with Assumption of Mortgage and Act of Correction, attached to the Complaint as Exhibits "11" and "12", respectively.

Further, as discussed *supra*, Melvin Irvin, Jr. acted on behalf of the Irvin Family Limited Partnership, Viewpoint and Orleans Place in the referenced conveyances and in the execution of the PNC Mortgage. As such, Melvin Irvin. Jr. certainly had knowledge of the properties that he intended to convey in these transactions, and his intent could not have been to transfer portions of the PNC Mortgage Collateral, specifically Lots 5 and 8, to other entities, and then to encumber the same property in favor of the PNC Mortgage. Other than filing a general denial Answer, the defendants, Viewpoint and Orleans Place, have not produced any countervailing evidence to establish their intent to retain ownership in and to the PNC Mortgage Collateral, specifically Lots 5 and 8.[48] Therefore, PNC Bank has demonstrated that at the time of the execution of the aforementioned conveyances, the parties to the conveyances did not intend to convey Lots 5 and 8, which are made part of the PNC Mortgage Collateral. Therefore, it is undisputed that portions of the PNC Mortgage Collateral appeared to have been conveyed to the Defendants, Viewpoint, Orleans Place and Sorrento Lumber, as a result of the incorrect legal descriptions contained in those conveyances.

### 3. Adverse Alienations and Prior Encumbrances that Prime the PNC Mortgage.

Prior to the executing and recordation of the PNC Mortgage, the Irvin Family Limited Partnership granted and recorded the following leases affecting space in the building located at 1078 E. Worthy Road, Gonzales, Louisiana, which prime the PNC Mortgage in the public records:

(a)     Original Lease Agreement between Irvin Family LP and Department of Social Services (n/k/a Department of Children and Family Services) dated June 1, 2005, as evidenced by Extract of Lease/Option/Amendment recorded on June 25, 2007 at Instrument No. 671843. The Original Lease Agreement was amended by that certain

---

[48] *See* Exhibit "D", Defendants Irvin Family Limited Partnership, Irvin & Associates, the Estate of Melvin Irvin, Jr., Viewpoint Development and Construction Company, and Orleans Place Subdivision, LLC's Responses to PNC Bank, N.A.'s Interrogatories and Request for Production of Documents.

Option Renewal to the Original Lease, which is dated July 7, 2011, as evidenced by Extract of Lease/Option/Amendment recorded on July 20, 2011 at Instrument No. 777419.

      (b)     Original Lease Agreement by and between Irvin Family LP and the State of Louisiana, Department of Social Services, as amended by that certain Amendment #2 to the Original Lease, dated June 1, 2005, as evidenced by Extract of Lease/Option/Amendment recorded on June 21, 2007 at Instrument No. 671525. The Lease Option was renewed on July 7, 2011 as indicated in that certain Extract of Lease/Option/Amendment recorded on July 20, 2011 at Instrument No. 777418.[49] ("State Leases").

It is undisputed that the referenced ground leases prime PNC's Mortgage and create an impediment to the execution of the PNC Mortgage. In order to resolve the title defect, PNC Bank has requested that the Borrower consent to the subordination of the State leases in favor of the PNC Mortgage.[50] In addition to the lease agreements, the Irvin Family Limited Partnership granted a mortgage to United Community Bank on December 11, 2000, which was recorded in the mortgage records of the Ascension Parish Clerk of Court as Instrument Number 477410.[51] The mortgage in favor of United Community Bank encumbers Lot 3 of Bonnie Lane Subdivision, which forms a portion of the Mortgage Collateral.[52] In order to resolve the title defect, PNC Bank has also requested that the Irvin Family Limited Partnership consent to the assignment and/or subordination of the United Community Bank mortgage in favor of the PNC Mortgage.[53]

### C. The Irvin Family Limited Partnership has breached its duty to deliver clear and merchantable title to the encumbered property under the Mortgage Contract.

The Irvin Family Partnership executed a mortgage in favor of BMC Capital, LP on August 29, 2007. "A conventional **mortgage** may be established only by a written **contract.**"

---

[49] *See* Complaint, ¶ 50; *See also*, Exhibit "30", *in globo*, attached to Complaint.
[50] See Exhibit "F", correspondences to Irvin Defendants regarding title curative action and documents.
[51] *See* Complaint, ¶45; *See also*, Exhibit "26", Exhibit "27", and "28" attached to the Complaint.
[52] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report.
[53] *See* Exhibit "F", correspondences to Irvin Defendants regarding title curative action and documents.

Under La. C.C. art. 3287, "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. C.C. art. 1906. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance consists of giving, doing, or not doing something." La. C.C. art. 1906. Thus, a contract is a source of obligations. La. C.C. art. 1757. Accordingly, a mortgage is a contract between the mortgagor and the mortgagee, and therefore, is governed generally by the Louisiana Civil Code articles applicable to conventional obligations. La. C.C. art. 1906, *et seq*.

La. C.C. Art. 1994 provides, "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance."  In Louisiana, the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.[54]

Pursuant to the provisions of the PNC Mortgage, the Borrower had a duty to deliver clear and merchantable title to the mortgagee. In the PNC Mortgage, Irvin Family Partnership warranted to PNC Bank that it was and would remain the lawful owner of the PNC Mortgage Collateral; that there would not be any prior encumbrances affecting the Property at the time the PNC Mortgage was recorded; and, that the PNC Mortgage would not be subordinate, at any time, to any security rights, interests, liens or claim of, or in favor of, any person, firm, corporation, or other entity. More specifically, the PNC Mortgage provision that expresses the warranty of title covenant in favor of PNC Bank provides as follows:

---

[54] *Favrot v. Favrot*, 2010-0986 (La. App. 4th Cir. 2/9/11); 68 So. 3d 1099, 1109.

**REPRESENTATION AND WARRANTIES CONCERNING THE PROPERTY. Except as previously disclosed to Mortgagee in writing, Mortgagor represents and warrants that; (A) Mortgagor is and will continue to be the lawful owner of the Property; (B) Mortgagor has the right to mortgage the Property to Mortgagee; (C) as of the time this Mortgage is recorded, there are no Encumbrances affecting the Property; (D) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, liens, or claims of, or in favor of, any person, firm, corporation, or other entity; and (E) the Mortgage is binding upon Mortgagor as well as Mortgagor's heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is cancelled in the manner provided above.** *See* Exhibit "A".

As alleged in the Complaint and Amended Complaint, and as more thoroughly discussed in the attached Expert Report, the Borrower was not the lawful owner of all of the property described in the Mortgage Collateral when the Mortgage Contract was recorded nor was the Mortgage Collateral free from title defects.[55]

As discussed *supra*, the Mortgage Collateral has been historically described in prior conveyances by identifying a larger tract and then referring to the properties conveyed out of the larger tract, known as "less and except" tracts.[56] However, certain "less and except" tracts were unintentionally omitted from transfers to and from the Borrower causing related entities, Viewpoint Development and Construction Company and Orleans Place Subdivision, LLC, and Sorrento Lumber Company, to appear to acquire an ownership interest in portions of the Mortgage Collateral, particularly Lots 5 and 8.[57] By conveyances on April 29, 1996, December 6, 1996, and November 9, 2006, Irvin Family Partnership conveyed several tracts, which

---

[55] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report.
[56] *See* Complaint, ¶ 16; *See also* Amended Complaint, ¶¶ 14, 16(a).
[57] *See* Complaint, ¶¶ 15-18; *See also* Amended Complaint, ¶¶ 16(a)-18.

included Lots 5 and 8, to Viewpoint Development and Construction Company.[58] Thereafter, Irvin Family Partnership mortgaged Lots 5 and 8 to BMC Capital, LP.[59] As a result of the above described conveyances, Irvin Family Partnership was not the lawful owner of Lots 5 and 8, and therefore, did not have the right to place a mortgage on Lots 5 and 8.

Likewise, at the time of the PNC Mortgage, there also existed prior encumbrances and adverse alienations affecting the PNC Mortgage Collateral, including a mortgage in favor of Iberville Bank, United Community Bank and ground leases in favor of the State of Louisiana through the Department of Social Services.[60] Subsequent to the filing of the Complaint, PNC Bank acquired a partial release of the Iberville Bank mortgage. However, PNC Bank has been unsuccessful in obtaining a subordination of the ground leases in favor of the State of Louisiana or the United Community Bank mortgage as such require the concurrence of the Borrower.[61]

Furthermore, the Mortgage Collateral is burdened by defective and non-functional condominium regimes that have created ambiguities in the description of the Mortgage Collateral.[62] To correct the legal description, PNC Bank has caused the survey to be made of the collateral that was intended by PNC Bank and the Borrower to be encumbered by the mortgage. The survey encompasses all contiguous tracts that comprise the PNC Mortgage Collateral.[63] In order for the survey to be effective, the property must be re-subdivided as described in the survey, and the condominium regime must be revised and reinstated so as to correctly describe

---

[58] *See* Complaint, ¶ 17; *See also* Amended Complaint, ¶ 17.
[59] *See* Exhibit "A".
[60] *See* Complaint, ¶¶ 37-51.
[61] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report, and Exhibit "F", correspondences to Irvin Defendants regarding title curative action and documents.
[62] *See* Complaint, ¶ 25.
[63] *See* a copy of survey map attached to Exhibit "C".

the Mortgage Collateral. However, these efforts require the concurrence and cooperation of the Borrower, which have not been forthcoming to date.[64]

Irvin Family Partnership, by signing the Mortgage Contract, agreed to be bound by the warranty of title covenants contained therein. Accordingly, Irvin Family Partnership had a duty to deliver clear and merchantable title to the encumbered property. Therefore, PNC Bank is entitled to a judgment declaring that the Irvin Family Limited Partnership is in breach of its duty to deliver clear and merchantable title to the encumbered property.

> **D. The Defendants, the Irvin Family Limited Partnership, Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin Irvin, Jr., and Irvin & Associates, have breached their duty to execute the necessary curative documents to cure the title defects and maintain the PNC Mortgage.**

Further, pursuant to the terms of the Mortgage Contract, Irvin Family Partnership obligated itself to execute any necessary documents to *maintain the effect* of the Mortgage. The PNC Mortgage provision that imposes this obligation provides as follows:

> **EXECUTION OF ADDITIONAL DOCUMENTS. Mortgagor agrees to execute all additional documents, instruments and agreements that Mortgagee may deem to be necessary and proper, within its sole discretion, in form and substance satisfactory to Mortgagee, to keep this Mortgage in effect, to better reflect the true intent of this Mortgage, and to consummate fully all of the transactions contemplated hereby and by any other agreement, instrument or document.** *See* Exhibit "A".

The plain reading of the aforementioned provision of the Mortgage Contract requires that the Borrower execute any documents that ***PNC deems necessary*** and proper to maintain the effect of the PNC Mortgage. Since the determination as to what "additional documents, instruments and agreements [that] may be necessary and proper" is within the "sole discretion" of PNC, it cannot be reasonably disputed that the Defendants are obligated to execute the

---

[64] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report, and Exhibit "F", correspondences to Irvin Defendants regarding title curative action and documents.

curative documents and perform any acts that are necessary to cure the title defects. As such, PNC is entitled to a judgment ordering the Defendants to execute such documents as required by the Mortgage Contract.[65]

Similarly, the Defendants, Irvin Family Partnership, Irvin & Associates, and Melvin Irvin, Jr., executed a Pre-Negotiation Agreement on April 11, 2012. [66] The pertinent portion of the Pre-Negotiation Agreement is stated as follows:

> C.   **COOPERATION OF BORROWER. You will, and will cause all Borrower Parties to, (i) cooperate with us in, and to execute any documents and pleadings related to, correcting any title defects related to the property that was intended to secure the loan.**

Under the terms of the Pre-Negotiation Agreement, the Defendants have a duty to execute any documents and pleadings necessary to correct any title defects related to the property.[67] By executing the Pre-Negotiation Agreement, the Defendants acknowledged the existence of the title defects and obligated themselves to cooperate and execute title curative documents and perform any action that would resolve the title issues.[68] Furthermore, PNC further avers that the Defendant, Irvin Family Limited Partnership, through its former counsel, acknowledged the existence of the title defects made subject to this proceeding, and agreed to cooperate in correcting those title defects.[69]

To resolve the title defects, PNC Bank has previously provided curative documents to the Defendants.[70] Despite PNC Bank's efforts, the Defendants, by correspondence dated June 14,

---

[65] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report, and "F", correspondences to Irvin Defendants regarding title curative action and documents.
[66] *See* Complaint, ¶¶ 52-57; *See also* Amended Complaint, ¶¶ 53(a) and 62. *See also* a copy of the Pre-Negotiation Agreement attached hereto as Exhibit "B".
[67] *See* Complaint, ¶ 52-57; *See also* Amended Complaint, ¶¶ 53(a) and 62.
[68] *See* Complaint, ¶ 52-57; *See also* Amended Complaint, ¶ 53(a).
[69] *See* Amended Complaint, ¶ 53(b). Documents that evidence the acknowledgement by Irvin Family Limited Partnership's former counsel are attached to the Amended Complaint as Exhibit "34", *in globo*.
[70] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report, and Exhibit "F", correspondences to Irvin Defendants regarding title curative action and documents.

2016, have failed to fulfill their obligations under the Mortgage Contract and the Pre-Negotiation Agreement by failing to and/or refusing to execute the curative documents which would resolve the title defects, and have ignored the judgment previously rendered by this Court.

It is undisputed that the Defendants executed the Mortgage Contract and the Pre-Negotiation Agreement. This Court has also already determined that under the express provisions of the Mortgage Contract and Pre-Negotiation Agreement, the Defendants have a duty to execute the necessary curative documents to cure any title defects that may be established in this case. Since PNC has clearly established the existence of title defects burdening the Mortgage Collateral, PNC Bank is entitled to a judgment declaring that the Defendants have breached their duty to cooperate in curing any title defects, which includes the execution of title curative documents necessary to cure any title defects. PNC is further entitled to a judgment ordering the Defendants to execute and deliver unto PNC all necessary curative documents and to perform all acts that are necessary to resolve all title defects associated with the PNC mortgage collateral. Specifically, PNC requests that this Court order the Defendants to execute the curative documents already provided to the Irvin Defendants on June 6, 2016 and June 10, 2016, as well as ordering the Irvin Defendants to perform all acts as listed in the correspondences dated June 6, 2016 and June 10, 2016, and as listed in PNC's Expert Report.[71] The duty to execute curative documents should also extend to Viewpoint and Orleans, which are entities wholly owned by the Irvin Defendants, and therefore, PNC requests that the Court also order Viewpoint and Orleans to execute any curative documents necessary to cure the title defects.

### E.  PNC is entitled to declaratory relief under 28 U.S.C.A. 2201.

PNC Bank amended its Complaint seeking declaratory relief and requesting that the Court declare and fix the rights of the parties in relation to the PNC Mortgage Collateral, which

---

[71] *See* Exhibit "C", Declaration of Isaac McPherson Gregorie, Jr. and accompanying Expert Report, and "F".

would encompass any interest of Irvin Family Limited Partnership, Viewpoint, Orleans Place and Sorrento Lumber.[72] PNC Bank has also amended its complaint requesting that the Court "declare and fix the real rights of the parties in relation to the immovable property subject to this proceeding, as it affects the noted condominium regimes, in accordance with 28 U.S.C.A. §2201".

28 U.S.C.A. §2201 provides in pertinent part:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[73] The question in a case seeking declaratory relief "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[74]

As discussed *supra*, there are third parties that may be affected by the reformation of the condominium regimes and the referenced conveyance instruments because those parties may have a "potential interest in the Mortgage Collateral." PNC Bank has named several defendants

---

[72] *See* Amended Complaint, ¶ 14.
[73] *Medimmune, Inc. v. Genentech, Inc.,* et al, 127 S.Ct 764, 770 (2007).
[74] *See id.* at 771.

in this proceeding who have acquired an ownership interest in the Mortgage Collateral either by a conveyance[75] or that hold a security interest[76] in the Mortgage Collateral. In its action for declaratory relief, PNC Bank has identified those parties who may have adverse legal interests regarding the Mortgage Collateral. In the event the Court declines to order those third parties, mainly Viewpoint, Orleans Place and Sorrento Lumber, to cooperate in resolving the title defects, which would include the execution of the title curative documents, PNC Bank prays that this Court declare and fix the rights of these parties in relation to the Mortgage Collateral. Specifically, and as discussed *supra*, PNC Bank prays that the Court determines that the Borrower, Irvin Family Partnership, intended to encumber the immovable property more particularly described in the survey attached hereto and referenced *supra*, and that the Defendants, Viewpoint, Orleans and Sorrento Lumber, do not have an ownership interest in the PNC Mortgage Collateral.

## **CONCLUSION**

For the foregoing reasons, PNC Bank, N.A. prays that, pursuant to Federal Rule of Civil Procedure 56, this Court:

1. Grant Summary Judgment against the Defendants, the Irvin Family Limited Partnership, a Louisiana Partnership in Commendam, Irvin & Associates, Inc., Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin Irvin, Jr., Viewpoint Development and Construction Company, Orleans Place Subdivision, LLC, and Sorrento Lumber Co., Inc.,

2. Find that there are title defects affecting the immovable property encumbered by the PNC Mortgage;

---

[75] *See* Complaint, ¶17; *See also* Amended Complaint, ¶17 (a)-(c).
[76] *See* Complaint, ¶37-44

3. Find that the Irvin Family Limited Partnership has breached its duty to duty to deliver clear and merchantable title to encumbered property under the warranty of title covenants of the PNC Mortgage;

4. Find that the Irvin Family Partnership has breached its duty previously found by the Court to execute any necessary in the judgment of PNC Bank to maintain the effect of the mortgage on the PNC Mortgage Collateral under the PNC Mortgage;

5. Find that Irvin Family Limited Partnership, Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin Irvin, Jr., and Irvin & Associates have breached their duty to execute necessary title curative documents and cooperate in resolving the title defects under the Pre-Negotiation Agreement;

6. Find that the Defendants, Viewpoint Development Construction Company, Orleans Place Subdivision, LLC and Sorrento Lumber Co., Inc., did not intend to convey or acquire an ownership interest in the immovable property encumbered by the PNC Mortgage, specifically Lots 5 and 8;

7. Find that the Defendants, Viewpoint Development Construction Company, Orleans Place Subdivision, LLC and Sorrento Lumber Co., Inc., do not have an ownership interest in and to the immovable property encumbered by the PNC Mortgage, specifically Lots 5 and 8;

8. Find that the Plaintiff, PNC Bank, N.A., is entitled to specific performance under the PNC Mortgage Contract and Pre-Negotiation Agreement for the correction of the title defects;

9. Find that the Irvin Family Limited Partnership intended to encumber the immovable property known as Francois Plaza Condominium Development ("PNC Mortgage Collateral" as defined in the Complaint, Amended Complaint and Memorandum in Support of Motion for Summary Judgment), and as more particularly described in the survey map attached as Exhibit "C-2" to the Declaration of Isaac McPherson Gregorie, Jr., attached hereto as Exhibit "C";

10. Order the Defendants, Irvin Family Limited Partnership, Irvin & Associates, Edgar Irvin, in his capacity as the Independent Administrator for the Estate of Melvin Irvin, Jr., the Estate of Melvin Irvin, Jr., Viewpoint Development Construction Company, Orleans Place Subdivision, LLC, and Sorrento Lumber Co., Inc., to execute and deliver unto PNC Bank all curative documents necessary in the judgment of PNC Bank and to perform all acts that are necessary to resolve all title defects associated with the PNC Mortgage Collateral; and,

11. Maintain the Court's jurisdiction of this matter to enforce this judgment and any other judgment rendered in this matter.

RESPECTFULLY SUBMITTED,

**SEALE, SMITH, ZUBER & BARNETTE, LLP**

BY: __/s/ *Jessica W. Chapman*_____
JESSICA W. CHAPMAN, #31097 – T.A.
WILLIAM C. KAUFMAN, III, #7657- T.A.
Two United Plaza, Suite 200
8550 United Plaza Boulevard
Baton Rouge, Louisiana 70809
Telephone: (225) 924-1600
Facsimile: (225) 924-6100
**ATTORNEYS FOR PNC BANK, N.A.**

**<u>CERTIFICATE OF SERVICE</u>**

I CERTIFY that a copy of the foregoing pleadings was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system. Baton Rouge, Louisiana, this 16th day of June, 2016.

*/s/ Jessica W. Chapman* _____
Jessica W. Chapman
